Harold Tessler, J.
Plaintiff sues to reform an existing lease between the parties on the ground that said lease does not contain the true intent and agreement of the parties with reference to the payment of increased real estate taxes by reason of the defendant’s construction of a new building on the premises.
Plaintiff is the owner of premises 21-01 24th Avenue, Astoria, and as such owner leased the premises to the defendant by written lease dated February 29, 1952. Prior to the execution of this lease, the parties executed an agreement to lease dated December 13, 1951. This agreement additionally included the sale of plaintiff’s late husband’s business located on the premises to the defendant. All of the applicable provisions of this agreement were incorporated and are included in the lease without change.
It is well to note at this point that both parties were represented by counsel throughout the negotiations, preparation and execution of the afore-mentioned written agreements.
The lease contains a provision whereby the defendant is given the right ‘ ‘ to alter the present premises, or build upon any vacant space on said property at his own cost and expense” (par; 28). In 1958 the defendant erected a new building at a cost to him of approximately $270,000, including furnishings and equipment. It was stipulated on the trial that the total assessed valuation of the property before the new construction was $30,000 and that for the tax year 1959-60 $125,000 and *831 for 1960-61 $130,000. The real estate taxes were increased, being $1,222.18 before the new construction and $5,274.94 for 1959-60 and $5,487.94 for 1960-61. It was further stipulated that this increase in taxes has resulted in the property showing an operating deficit, including mortgage expenses, of approximately $1,850 per annum.
Plaintiff contends that the defendant is legally obligated to pay the increased taxes by reason of paragraph 28 of the lease and more particularly because of the language “ at his own cost and expense ”, In order to establish this obligation, plaintiff seeks to reform the lease so as to express what she claims was the true agreement and intention of the parties, viz.: that the defendant be liable for such increase in real estate taxes as were caused to date by reason of the new construction and any additional increase that may occur in the future. There is no provision in the lease that is commonly known as a tax “ escalator ” clause which is the usual instrument by which such increase in taxes are made the obligation of the tenant.
Plaintiff contends firstly that there was an agreement by the defendant to pay the increased taxes and that through mistake this agreement was omitted from the lease; secondly that paragraph 28 of the lease clearly indicates that in exchange for the unlimited and unrestricted right to alter or build on the premises, the defendant was to pay any increase in taxes, and that the failure to include any such specific language or “escalator” clause in the written lease was the eiror or omission of the scrivener, which error the court may and should correct.
In support of these contentions, plaintiff testified that she or her husband spoke to the defendant in January, 1952 (before the execution of the lease on Feb. 29, 1952), stating that he (defendant) must take care of increased taxes and that he said he would. Plaintiff further testified that in October, 1958, after construction of the new building had commenced, her husband spoke to the defendant about the increase in taxes and that the defendant replied ‘6 Don’t worry, I’ll pay ’’. Further, that after 1958, her husband repeatedly asked the defendant to pay the increase in taxes and that the latter consistently refused to do so. This is the extent of the testimony and proof offered by the plaintiff.
Defendant denied that the conversations related by the plaintiff took place and testified that there were no words or discussion about a new building until 1955 when he first decided to build and spoke to the plaintiff’s husband about signing the necessary application for a zoning change. He presented this application to the plaintiff through her husband and she signed *832 it. He testified that the first and only time taxes were discussed was in 1958 before construction was commenced when he proposed to the plaintiff’s husband that the owner build and finance the new building in return for which he (defendant) would pay the taxes and insurance in the form of an increased rental. This proposal was turned down by the plaintiff. It should be noted that the parties stipulated on the trial that Ralph Maraño, plaintiff’s deceased husband, was at all times her attorney in fact and authorized to speak and act on her behalf.
In order to grant reformation, the right to that remedy must be established by “ clear, positive and convincing evidence. Reformation may not be granted upon a probability nor even upon a mere preponderance of evidence, but only upon a certainty of error ’ ’. (Amend v. Hurley, 293 N. Y. 587, 595; Christopher St. R. R. Co., v. 23rd St. Ry. Co., 149 N. Y. 51; Salomon v. North British & Mercantile Ins. Co., 215 N. Y. 214.) I find that the evidence in this case falls far short of meeting this standard.
It should be noted that the first conversation that the defendant, out of which plaintiff seeks to spell out an agreement by the defendant to pay an increase in taxes, took place before the execution of the lease on February 29,1952, and after the written agreement to enter into a lease dated December 13,1951. There is nothing in either writing to indicate any such agreement. Plaintiff’s argument that the language “ at his own cost and expense ”, as contained in paragraph 28, indicates such intent and agreement is thin and untenable. In that paragraph this language follows immediately after the words “ to alter the present premises, or build upon any vacant space on said property ”. It is manifest that the words “ own cost and expense ” refer only to the cost and expense of construction and must be limited to that alone. There is nothing anywhere in the language to warrant the conclusion that the phrase was contemplated or intended to attach to an increase in taxes. If such was intended, it was up to the parties to have said so in recognizable language in the lease. The court may not and should not make a new agreement for them. The court’s “function is limited to construction of the agreement that the parties mutually made”. (Black v. General Wiper Supply Co., 305 N. Y. 386, 394.)
I can find nothing in the proof to indicate the existence or occurrence of any scrivener’s error, mutual mistake or fraud by the defendant. In the absence of these, the court is without power to order a reformation of the lease. (See Abrams v. Maryland Cas. Co., 270 App. Div. 901; Salomon v. North British & Mercantile Ins. Co., supra; Amend v. Hurley, supra.) It is clear that the lease agreement between the parties fully and *833 completely expresses the bargain they made, which bargain has been in effect and operation since February, 1952. The court is without power to compel the defendant to enter into or be bound by a new agreement, which he never made. (Salomon v. North British & Mercantile Ins. Co., supra.)
Although it is true that the plaintiff presently shows a deficit in the operation of the building, it must be remembered that the lease finally terminates on February 28, 1972 (assuming the defendant exercises his 10-year option privilege), at which time the plaintiff, according to the provisions of the lease, becomes the owner of the building with a value of approximately $220,000 less depreciation. Who can say that this was not an important consideration and within the intent and contemplation of the parties in fixing the rental and the other terms of the agreement ? The proof before me discloses nothing to the contrary and compels the conclusion that plaintiff has not made a case. For all of the foregoing, I find that the defendant is entitled to judgment dismissing the complaint.