Birdie Amsterdam, J.
This action which seeks to recover an alleged balance of damages for fire loss is predicated upon plaintiff’s claim that, solely due to the negligence of the defendant, an insurance broker, in procuring fire policies and failing to properly describe plaintiff’s building, the insurance companies resisted payment, necessitating the bringing of lawsuits against them for collection and ultimate settlement with them for less than the losses claimed to have been incurred.
The answer admits that, at plaintiff’s request, defendant obtained the subject policies, but otherwise denies generally.
The undisputed proof disclosed that in August of 1955, at plaintiff’s request, the defendant, a domestic corporation engaged in the business of an insurance broker, procured a standard statutory fire policy with the Century Insurance Company, Limited (hereafter referred to as “Century”), in the amount of $50,000, on a house owned by plaintiff, at Laurel Hollow, Nassau County, Long Island, New York. Plaintiff had bought the property in April of 1949. This was the first *504 policy of fire insurance he purchased thereon. The policy described the building as a brick building occupied as a private dwelling. In May of 1956, by reason of difficulties with vandals, thievery and damages to the premises, Century gave notice of intention to cancel its policy. At this time plaintiff requested defendant to obtain coverage on the contents in the premises, and defendant procured a fire policy with the Camden Fire Insurance Association (hereafter referred to as “ Camden”), in the amount of $15,000. On July 1, 1956, the Century policy was cancelled and replaced by a policy of $50,000 with Fireman’s Fund Insurance Company (hereafter referred to as “ Fireman’s ”). On February 14, 1957 Camden forwarded to defendant written notice of cancellation, to be effective five days after receipt. This notice was received by plaintiff on March 2, 1957. Both the Camden and Fireman’s policies described the building as brick. However, the evidence established its type of construction was frame with stucco, and not brick.
The uncontradicted evidence further established that on March 6, 1957 the building and its contents were destroyed by fire. Plaintiff submitted proofs of loss to Camden and Fireman’s, claiming losses in excess of the amount of insurance. The companies refused to pay. Thereupon plaintiff instituted actions against them, demanding damages in the sums of $15,000 and $50,000, respectively. In their answers, the carriers admitted the issuance of their policies and timely receipt of proofs of loss, but interposed general denials and affirmative defenses. Camden set up in the latter category: (1) That prior to plaintiff’s loss its policy had been effectively cancelled; (2) that plaintiff misrepresented that his premises were of brick construction; (3) that plaintiff misrepresented that his premises were not vacant and unoccupied. Fireman’s asserted an affirmative defense that plaintiff misrepresented that his premises consisted of a brick building occupied as a private dwelling.
Prior to trial, plaintiff settled the actions for $23,000 against Fireman’s and $7,500 against Camden, and released them from all liability. Thereafter he instituted the instant lawsuit against the present defendant, seeking to recover $34,500, i.e., the difference between the settlement figures and the amounts specified in the two policies. He did not apprise this defendant of his intention to prosecute a claim against it until after he had settled and released the insurance companies.
The theory of liability advanced by plaintiff is that defendant’s employee, Mr. Novak, with whom plaintiff dealt for the purpose of obtaining this insurance, had visited and seen the subject building, and knew, or should have known, that it was *505 not of brick construction; that plaintiff relied upon Novak to properly secure these policies; that it was defendant’s duty to act in plaintiff’s best interest, to verify any information which was being used as the basis of procuring the said policies; that in procuring the policies, defendant negligently represented to the insurance companies that the premises to be insured was a brick building, when in fact it was not; that solely because of said misdescription, the underwriters refused to pay, necessitating the bringing of lawsuits against them; that if said suits had gone to trial, they might have resulted in judgments in the carriers’ favor, based solely on said misdescription ; that in the circumstances, plaintiff compromised those actions to minimize the damages.
Defendant denies that it placed plaintiff’s policies on a brick building or advised the insurance carriers that the premises were of brick construction; it contends that the accuracy in respect of the description of premises insured under Standard Statutory fire forms is the sole responsibility of the insurance companies and their rating bureaus; claims that the affirmative defense of misdescription entered by the insurance companies in plaintiff’s lawsuits against them was of no legal validity; asserts that plaintiff knew that the building was not brick constructed and further knew that the policies described it as brick, and, therefore, may not recover by reason of his contributory negligence; contends that the evidence as to damages is wholly insufficient; and maintains that plaintiff has been fully compensated for his loss.
At this point, directing our attention to the affirmative defenses pleaded by the carriers in their answers to plaintiff’s actions against them, we find that Camden’s contention that its policy had been effectively cancelled prior to the fire is without merit being contrary to the established proof. A letter of the Assistant Postmaster of the United States Post Office in California, dated March 8, 1957, clearly evidences that the Camden letter of notice of cancellation was delivered to plaintiff on March 2, 1957. Hence, cancellation did not become effective until March 7, 1957, a day after the fire occurred. As to the affirmative defense that plaintiff misrepresented that his premises were not vacant and unoccupied, this is negated by the specific provision of the policy as follows: “ Permission granted: (1) to be unoccupied or vacant without limit of time ”. Anent the affirmative defense of misdescription of the building as brick, we have the testimony of Mr. Novak, defendant’s soliciting broker, its then employee, who dealt with plaintiff in placing all of the policies, i.e., the Century, Camden and Fire *506 man’s. He denied that he ever determined that plaintiff’s building was of brick construction or that he placed plaintiff’s policies for a brick building; he testified that he visited plaintiff’s home on two occasions prior to the fire on a purely social basis and at no time did he view the exterior of the premises with a view toward determining its construction. Defendant’s vice-president, Mr. Travers, conceded to be an expert insurance broker and also an expert fire underwriter, testified that the broker selects the fire insurer with whom to place a fire risk— that after an insurer has been selected, a binder is delivered to the insurer for approval and signature — that later an original and copy of the policy is sent by the insurer to the broker, and a copy thereof is also sent by the insurer to the latter’s rating bureau, where the various features of coverage, including construction of the premises, are checked —that the rating bureau utilizes the services of Sanborn Maps, which indicate the type of construction of the property to be insured — that this procedure was followed in the placement of plaintiff’s policies — that construction information is not furnished by a broker unless the insurance is a renewal of an existing policy placed through another broker — that plaintiff’s fire insurance was not such insurance, it was a new line. The attorney, Mr. Polk, who represented Fireman’s in the action instituted by plaintiff against it, concededly an expert on insurance, stated in a report on the settlement of the action, the following: ‘ ‘ However, as you know, these affirmative defenses based upon the misdescription of the building in the policy were of doubtful validity in view of the fact that the insured himself apparently did not choose the particular wording of the description ”.
It is elementary that a broker is the agent of the assured, not the insurer as to all matters within the scope of his employment, and the acts or knowledge of such broker will be binding or imputed to the assured (44 C. J. S., Insurance, § 140, p. 799). Applying this maxim to the facts in the instant case, if the defendant had misdescribed the premises, his act would be binding upon plaintiff. So that, it is hardly likely that Mr. Polk would have taken such a position if the misdescription could be attributed to plaintiff through his broker, and not to the insurance companies.
The following evidence is of note on the issue relating to the description of the building. Prior to requesting any placement of insurance, plaintiff, in his supplementary letter to his application for a hearing for a reduction of the assessed valuation on the premises, described himself “as a man probably more familiar with the true condition of the property than *507 anyone else, and likewise as an engineer, recognized by the State and by the Federal Government (to whom I am a Consultant) as somewhat of an authority of building structures ”, and also stated therein as follows: ‘ ‘ Exterior: Broken stucco, falling off in many spots ’ Ergo, it is reasonable to assume that plaintiff knew before the procurement of the policies that the building was not brick-constructed. His scienter as to construction is further borne out by the testimony of Mr. Frati, whom plaintiff engaged as caretaker of the premises and who helped plaintiff in maldng repairs thereon. It is to the effect that in August of 1956 he was present during a conversation between plaintiff and an adjuster of the insurance company relating to a claim for vandalism and heard plaintiff tell the adjuster that the premises were brick-constructed; that after the adjuster left, Frati inquired of plaintiff why plaintiff had said it was brick and that plaintiff replied that the company would raise his premium if he said it was a frame building and not brick. Although this is denied by plaintiff, the court is inclined to credit Frati’s testimony with respect thereto.
Although plaintiff, during trial, at first denied that he had seen any of the policies until some time after the fire, he testified in his examination before trial that he believed the policy (Century) was mailed to his house and he probably saw it. On cross-examination during trial, he admitted that, pursuant to demand for the return of the Century policy for cancellation, he had his wife return it, as he was in California on business at the time. The description of the premises in the Century is precisely identical to that given in the Fireman’s and Camden policies.
Mr. Novak testified that when a premium billing is mailed to an assured, the policy is simultaneously sent with the billing. Plaintiff admitted that he paid the premiums upon all three policies, and stated that he received considerable mail and could not remember everything he received. Plaintiff’s disclaimer of receipt of the policies is not convincing. His claim of lack of knowledge that the building was described as brick appears to be disproved by his letter dated February 12, 1957, which acknowledged receipt of defendant’s letter dated January 29,1957, wherein it is prominently stated: “Be: Fire Insurance on Brick Building Situated at Laurel Hollow Boad, L. I.”, the subject building. It is the court’s opinion that if plaintiff was penalized to any degree by the ‘1 brick ’ ’ description, a finding is irresistible that it was with his concurrent negligence.
Having admittedly received the Century policy, the law presumes he read its provisions, and if he omitted to do so the *508 law does not excuse such omission (Quinlan v. Providence Washington Ins. Co., 133 N. Y. 356; Euto v. [American] Lumbermens Mut. Cas. Co. of Illinois, 247 App. Div. 613). A client charging his broker with negligence must prove his own freedom from contributory negligence (Kamen Soap Prods. Co. v. Prusansky & Prusansky, Inc., 5 A D 2d 620).
Aside from the issue as to where responsibility lies for the improper description of the premises as brick, the plaintiff, as an integral part of his cause of action, as an indispensable condition, as a sine qua non, must prove that recovery from his insurers was precluded or reduced solely by reason of the misdescription. The record here is barren of such proof. The attorney, Mr. Polk, testified that he had conferred and co-operated with the attorneys who appeared for Camden in plaintiff’s suit against Camden; that it was considered the affirmative defense of misdescription as brick was of doubtful validity; that the claims for prior losses occasioned by vandalism made and collected by plaintiff against all the afore-stated insurance companies, had a bearing on the legal evaluation of the merits of the defense of either misdescription or unoccupancy of the property. He stated that this was so in view of the fact that the company ‘ ‘ had received notice of the unoccupancy of the building and the type of construction in connection with the adjustment of the prior vandalism claim of August 30, 1956.” In this latter regard, it was disclosed that in September of 1956, a representative of the insurers called at the subject premises to investigate plaintiff’s claim of vandalism loss, and at the time examined the exterior of the premises. This representative was an agent of the insurance companies. He knew, or should have known, of the type of construction six months prior to the fire loss, and the knowledge he acquired or should have acquired at that time, that the building was not brick-constructed, must be deemed the knowledge of the insurance companies. It is a well-established rule that notice received or knowledge acquired by an agent engaged in his principal’s business, which should have put him on inquiry, is deemed to be notice or knowledge of his principal of material facts which the agent would have discovered had he inquired. (Bennett v. Buchan, 76 N. Y. 386; Prescott v. Le Conte, 83 App. Div. 482, affd. 178 N. Y. 585; Corrigan v. Bobbs-Merrill Co., 228 N. Y. 58; Drilling v. New York Life Ins. Co., 234 N. Y. 234.)
In view of the foregoing, the defense of misdescription was manifestly of no avail to the fire insurers. Furthermore, the said attorney stated that the answer ‘1 placed in issue the actual cash value of the insured building and the amount of plaintiff’s *509 damage “ that the companies’ best possibility of resisting the claim or reducing the amount, appeared to be by evidence that the sound value of the insured building was considerably less than the face amount of the policy that they “were hopeful that * * * [they] could limit the insured’s recovery to an amount in the neighborhood of $25,000.” To the inquiry by plaintiff’s counsel on cross examination: “Isn’t it a fact that usually in these insurance cases where the only dispute is one as to amount, that there is usually an adjustment of the claim between the insured and the adjuster? ”, his answer was as follows: “ I couldn’t subscribe to that, where there is such a disparity between the amount claimed and the amount which, in the opinion of the company, is the actual amount of the loss. Then, very often, there is a reference to a lawyer.”
In light of the foregoing, the court is persuaded that there is a complete failure of proof that the insurance companies refused payment solely because of the misdescription as brick. There is no showing of any agreement between plaintiff and the two companies as to either the legal merit or value of the affirmative defense of misrepresentation of the construction of the building; by plaintiff’s settlement with the fire insurers before notifying defendant of an intention to prosecute a claim against defendant, the latter was not given an opportunity to intervene in the action against the fire companies to establish directly the invalidity of the plea of misdescription as to construction.
Furthermore, there is no adequate showing to establish damages in excess of the amounts received by plaintiff from his fire insurers. Plaintiff admitted that prior to the fire the last time he visited the premises was in December, 1956. There was testimony by the caretaker that most of the contents claimed by the plaintiff in his proof of loss had been taken by, or removed and sent to plaintiff prior to the fire, and some had been given to him by plaintiff. Concerning money damages for the building, plaintiff in his verified application, dated May 11, 1951, for a reduction of the assessed valuation of the premises stated: “ Estimate of present values — Land $4,495 — Building $5,505 — Total $10,000”; that the building was “virtually a shell ”, having been allowed to go to rack and ruin. Although there was testimony that he had made some repairs and improvements after said application, the preponderant credible evidence demonstrated that the loss did not exceed more than the amount plaintiff paid for the building and the approximate amount of the improvements made; that the building was functionally obsolete, having long outlived its economic life; that it had actually little or no market value at the time of the *510 fire and was, in fact, a liability, since the land would have been worth more without the building.
After full consideration and evaluation of all the proof, oral and documentary, and in light of all of the circumstances and reasonable inferences and probabilities presented herein, I am persuaded and am of the ultimate conclusion that plaintiff has failed to establish his cause of action by a fair preponderance of the credible evidence.
Consequently, judgment is rendered in favor of defendant, dismissing the complaint on the merits. All motions on which decision was reserved are resolved in accordance with this determination.
The foregoing constitutes the decision of the court pursuant to section 440 of the Civil Practice Act. Formal findings of fact and conclusions of law were waived. Let judgment be entered accordingly.