Joseph A. Suozzi, J.
This is an action for reformation of a policy of robbery and burglary insurance and for damages upon said policy. Only the prayer for equitable relief was before this court; that portion of the action which seeks damages on the policy will be tried separately at Trial Term, Part VII.
Plaintiffs procured their first policy from defendant in November, 1955 and continued to renew their policies in the same form *218 through May, 1957. The policy in suit covered the period from May 16,1957 to May 16,1958. A robbery occurred off plaintiffs ’ premises on December 20, 1957, while the latter policy was in force.
Plaintiffs made application for the original policy through an agency which in turn contacted the defendant. Defendant engaged an inspection bureau to inspect plaintiffs’ place of business and otherwise investigate and report to defendant on the applicant. The investigator interviewed one of the plaintiffs, inspected the premises and rendered a report to defendant.
The original policy and all renewals stated that ‘1 the business conducted in the premises by the insured is Wholesale Jewelers ’ ’. In fact, plaintiffs always did and still do conduct a jewelry messenger service. Defendant has disclaimed liability on the policy on the ground that it never intended to insure a jewelry messenger service, and insured plaintiffs only because of their express representation that they were wholesale jewelers. Plaintiffs deny that this representation was ever made. Plaintiffs’ witness, Schorr, testified that he told defendant’s investigator that they conducted a messenger service and were not wholesale jewelers. Plaintiff Schorr further claims that his conversation with the investigator, taken together with the physical inspection, could have led to no other conclusion. The investigator, on the other hand, testified that the contrary representation was made. The investigator’s report to his employer stated in pertinent part: “Most of the applicant’s business is on the outside of premises and various places in jewelry districts to customers * * * and will have on each person a max. of $2000 to $3000 mdse. Including also 2 other persons employed by applicant * * * Applicant & employees travel by public transportation, alone and unarmed, also by car.”
Defendant has pleaded three affirmative defenses that are pertinent here: (1) that the policy should be rescinded because of plaintiffs’ fraudulent misrepresentation; (2) that plaintiffs should be barred from seeking reformation because of their laches in holding the policy for several years before and two years after the robbery before seeking this relief; and (3) that plaintiffs should be estopped from seeking reformation on the ground that the period of time they held the policy without complaint resulted in acceptance and ratification.
It is an academic rule of law, as urged by the defendant, that “ [I]f the warranties are written into the policy, the company has the right, in spite of any knowledge or information it may have, to rely thereon ”. (Satz v. Massachusetts Bonding & Ins. Co., 243 N. Y. 385, 393.) However, the rule has no application *219 here for upon a review of all the evidence, the court finds that plaintiffs made no such warranty or declaration. This finding is buttressed by the fact that there was ample and reasonable opportunity for the defendant’s investigator to have ascertained the true nature of plaintiffs’ business. The making of the investigation by the defendant, in itself, belies defendant’s contention that it relied upon the plaintiffs ’ representations in issuing this policy.
On the question of laches after the robbery, the proof reveals that a prompt claim for payment was made against defendant, that negotiations were in progress on this claim, and that each time a suit was brought against plaintiffs in connection with a customer’s loss in the robbery, they cross-claimed against defendant. So that, although this suit for reformation was not commenced immediately after the loss, there is no doubt that plaintiffs acted diligently since that time in seeking to recover on its policy.
The basic prayer for relief is that the policy be reformed to reflect the actual agreement between the parties. In Lewitt & Co. v. Jewelers’ Safety Fund Soc. (249 N. Y. 217) the general rule was stated to be that where a written instrument fails to conform to the agreement between the parties in consequence of mutual mistake, however induced, or the mistake of one party and fraud of the other, the instrument will be reformed to conform to the actual agreement between the parties (citing Albany City Sav. Inst. v. Burdick, 87 N. Y. 40; Bidwell & Banta v. Aster Mut. Ins. Co., 16 N. Y. 263; Welles v. Yates, 44 N. Y. 525; First Nat. Bank v. Morgan, 73 N. Y. 593). In the Bidwell case (supra) it was further held that reformation would be granted to make the policy correspond with the terms of the bargain entered into, notwithstanding failure of plaintiff promptly to make discovery of the terms of the policy.
Defendant takes the position that it would not have insured plaintiffs had it known that a messenger service was involved. This, despite the fact that there is a rate for such a policy and that the premium for a messenger service policy is the same as that for a wholesale jeweler. The plaintiffs clearly were a messenger service, and never attempted to conceal that fact. Even if plaintiff Schorr did not so state to defendant’s investigator in those Avords— as the proof indicates he did — it was a fact that the defendant’s investigator could easily have ascertained. In any event, an examination of defendant’s investigator’s report reveals that it is descriptive of the business that the plaintiffs had been and are conducting. The investigator’s mistake in characterizing it as a wholesale jeweler instead of a *220 messenger service cannot now be used to defeat the plaintiffs’ recovery. The defendant’s compounding of this error by writing this description into the policy does not excuse its responsibility.
The failure to properly reflect plaintiffs’ actual business in the policy was a mistake that this court should and will correct, and the plaintiffs are not estopped from seeking relief by way of reformation. (See Bidwell v. Astor Mut. Ins. Co., supra; Hay v. Star Fire Ins. Co., 77 N. Y. 235.) Accordingly, judgment will be granted correcting the policy to conform to the actual agreement between the parties so as to insure plaintiffs against loss and liability as a jewelry messenger service.
The insured’s failure to read the policy and discover the error does not prevent reformation (Appleman, Insurance, § 2913). This statement reflects the general rule as followed by the Bidwell case (supra). Hilton v. Federated Brokerage Group (30 Misc 2d 503) is the only case cited by defendant which states that the omission to read a policy is inexcusable. However, that ease was an action at law, not equity, and its holding will not be followed here since it does not purport to change the general rule in equity cases. We find that the test of certainty of error recited in Marano v. Corbisiero (27 Misc 2d 830) and the cases cited therein, has been met here.
The foregoing constitutes the decision of the court pursuant to section 440 of the Civil Practice Act.
Submit interim judgment. The remaining issues in this consolidated action will be tried at Trial Term, Part VII, pursuant to the terms of the order of November 29, 1961, by Mr. Justice Robinson.