FRANZ FARR, Appellant, *v.* GEORGE W. NEWMAN et al., Respondents.

Fourth Department, February 28, 1963.

*Shane & McCarthy* (*Edward M. Horey* of counsel), for appellant.

*Kelly & Monighan* (*John J. Monighan* of counsel), for Elbert C. Hardy, respondent.

WILLIAMS, P. J.   This action was instituted to enforce specific performance of a contract for the purchase and sale of real estate.   The defendant, among other defenses, pleads the Statute of Frauds.

The defendant Hardy, the present owner of the property, is the grantee of Mr. and Mrs. Newman, former owners.   Mr. Newman, no longer a resident of this State, was named a party defendant and was served by publication, but he defaulted in pleading and appearance and was not represented at the trial. Mrs. Newman was not made a party.   No testimony of either was produced by deposition or otherwise.

The complaint demands judgment that both defendants Newman and Hardy be directed to deliver a deed of conveyance. The complaint alleges that Mr. Newman entered into a contract to sell the property to the plaintiff.   No reference is made to Mrs. Newman, and it is not alleged that she joined in the written contract.   Facts were developed during the trial which demonstrated that if there was a valid written contract it would be binding upon Mr. Newman as a signatory and upon Mrs. Newman under the theory of estoppel.

In 1959 the plaintiff was the owner of premises on North Lyndon Road, Cattaraugus County, New York, directly across the road from a farm owned by the Newmans as tenants by the entirety.   Plaintiff happened to visit the Newman farm, and while he was there Mrs. Newman asked him if he wished to purchase it.   He said that he did not but that he thought his brother-in-law would be interested.   Mrs. Newman set a price of $3,000 cash, and he asked for her name and her Florida

address, which she wrote on a piece of note paper. At the request of the plaintiff, she also wrote down the price as "3,000.00 cash" and the address of the people with whom she was staying in New York State. Mr. Newman was also present throughout this discussion.

Later that day plaintiff returned to the Newman farm, where both Mr. and Mrs. Newman were standing in the driveway. Plaintiff told Mrs. Newman that he was interested in the property. He said: "I am interested, and I would like to take it myself." Mrs. Newman said, "Very well. That is good." The plaintiff asked his wife if she would make a deposit on the property, and she gave $50 in cash to Mrs. Newman. After receiving the cash, Mrs. Newman said to her husband: "Go in the house and make a receipt for the fifty dollars for Mr. Farr". All of them then went into the house, and in Mrs. Newman's presence Mr. Newman wrote and signed a paper which read:

"July 20, 1959

Received of Mr. Farr $50.00 as down payment on farm — sale price 3,000.00 three thousand dollars cash at delivery of clear title.

George W. Newman

148 acres more or less
$3,000.00
    50.00
_____

$2,950.00 "

At that time Mr. Newman said that the farm contained 148 acres. He stated that he wanted to sell the farm because he had no other interests and wanted to return to Florida.

About 8 o'clock the next evening plaintiff received a telephone call from a Mr. Cash, an attorney of the locality, who indicated that Mr. and Mrs. Newman were in his office with another purchaser. He said that if plaintiff would be willing to pay an additional $1,000 he could have the farm. Plaintiff told Cash that he had a signed memorandum from Mr. Newman, but nevertheless Cash said the Newmans were going to sell to the other party. Plaintiff objected, and the conversation was concluded. Nothing was said by Cash about Mrs. Newman's interest in the property. Plaintiff had no further discussions with Cash. However, subsequently and before the deed to Hardy, plaintiff's brother-in-law telephoned Cash and said that he was talking about the farm that plaintiff had purchased "from the Newmans" and that he had consulted counsel and was advised that plaintiff had an enforcible agreement. About a week later plain-

tiff received a letter from Cash enclosing a bank money order in the amount of $50 "from George W. Newman," which he has never cashed or used. Later, on learning that the property had been deeded to the defendant Hardy, he wrote to Hardy saying that he was ready to pay the balance of $2,950 upon the receipt of a deed.

It is undisputed that Cash represented both the Newmans and the defendant Hardy. At the time of the conveyance to Hardy, Cash had full knowledge of the fact that plaintiff claimed the right to purchase the property under a contract of sale. Cash testified that he did not communicate that fact to Hardy, nor did he tell Hardy that he had previously been retained by the Newmans. Nevertheless, his knowledge of the plaintiff's contention that he had the right to purchase full title was imputable to Hardy. (*Bennett* v. *Buchan,* 76 N. Y. 386, 390–391; *Raines* v. *Moran,* 57 N. Y. S. 2d 800, affd. 270 App. Div. 979. See also *Henry* v. *Allen,* 151 N. Y. 1, 9; *Smith* v. *John Hancock Mut. Life Ins. Co.,* 260 App. Div. 990.)

Apparently Cash had full knowledge of all the facts involved, including the activities and inactivities of Mrs. Newman, because he advised his clients that plaintiff's contract was unenforcible. How he could arrive at that conclusion without exploring the matter fully is difficult to understand. His explanation was that both of the Newmans had told him that Mr. Newman had signed the receipt upon the condition that it would not be valid unless Mrs. Newman signed. However, a simple examination (which he did not undertake) of the document would have disclosed that it contained no such condition but that it was an outright contract of purchase and sale.

It may be that "communication[s], made by his client[s] to him," were confidential and that he had no right to divulge such information to Hardy (Civ. Prac. Act, § 353). This restriction, however, would not encompass information that he acquired from other sources (*Matter of King* v. *Ashley,* 179 N. Y. 281). Nevertheless, after he entered into his legal relationship with Hardy, notice of plaintiff's contentions as to the validity of the contract was again given him, this time by plaintiff's brother-in-law. He then owed a duty to Hardy to investigate the matter fully because, as principal, Hardy was chargeable not only with Cash's actual nonconfidential knowledge, including full knowledge of plaintiff's assertions, but also with what information an inquiry, reasonably suggested under the circumstances, would have developed. "If the agent acquires knowledge of a fact, while engaged in the business of his principal, and fails to institute the proper inquiries, by reason of forgetfulness, it is

negligence, and the doctrine of constructive notice applies."
(*Bennett* v. *Buchan,* 76 N. Y. 386, 390–391, *supra.*) (See, also,
*Link* v. *Wabash R. R. Co.,* 370 U. S. 626, 633–634; *Hilton* v.
*Federated Brokerage Group,* 30 Misc 2d 503, 508; Restatement,
Agency 2d, § 272, Comment *b* [1958]; 7 C. J. S., Attorney and
Client, § 69, p. 853.)

We now turn to a consideration of the legal sufficiency of the
purported contract in the light of the defense of the Statute of
Frauds. We find that it mentions the $50 payment as "down
payment on farm — sale price 3,000.00 three thousand dollars
cash at delivery of clear title." Beneath Mr. Newman's signa-
ture and in his handwriting are the words "148 acres more or
less." Although generally a contract which is under attack by
virtue of the Statute of Frauds must stand unsupported by oral
evidence, some proof of the surrounding circumstances may be
considered for the purpose of identifying the property described
in the writing (*Marks* v. *Cowdin,* 226 N. Y. 138, 143–144). In
this case the evidence shows that the "farm" which is the
subject of the contract was the one upon which the owners and
the potential purchasers were personally present during the
negotiations. The acreage is stated, its location is in no doubt,
and the testimony shows — or at least strongly indicates — that
the Newmans owned no other real property in that vicinity.

A contract, to be enforcible, need not contain every single
element of the transaction. It is sufficient if the property and
the general terms of sale may be ascertained from the document.
In other words, the agreement will not fall merely because it
does not embrace every detail incidental to its performance.
"Details of that order may be left open for future specification
without destruction of the contract and of every remedy there-
under. * * * Seller and buyer accept by implication as to
such matters the test of the reasonable or the customary if no
other is available." (Citations omitted.) (*N. E. D. Holding
Co.* v. *McKinley,* 246 N. Y. 40, 45.) No essential term of this
contract was left to be agreed upon in the future. (*Marks* v.
*Cowdin, supra.* See, also, *Crabtree* v. *Elizabeth Arden Sales
Corp.,* 305 N. Y. 48, 57.) In our opinion, the contract was suffi-
ciently definite and certain to satisfy the requirements of the
Statute of Frauds.

The authorities which estop one from setting up the defense
of Statute of Frauds, or claiming that the contract is not binding
upon him because of his partial ownership, are clearly applicable
to the facts of this case. There is no doubt that Mrs. Newman
had complete knowledge of, and, indeed, actively participated in
the entire transaction. She is the one who wrote the first memo-

randum, containing the language "3,000.00 cash," her local address of Franklinville, New York, and her Florida address. She was present with her husband when the plaintiff said he would purchase the property for $3,000. It was she who accepted the $50 down payment and it was she who requested her husband to write out the memorandum. These actions were affirmatively misleading.

Moreover, as a tenant by the entirety, if she did not intend to be bound by the agreement, it was incumbent upon her to announce her interest in the property and indicate her objection to the sale. The Court of Appeals has indicated that circumstances of this very nature impose upon an owner of real property the duty of asserting his rights to the property. "There must be a standing by and encouragement, or at least an acquiescence, on the part of the true owner in acts inconsistent with his right, knowing that the other party, acting under a false impression, is about to do what will result in his injury." (*Thompson* v. *Simpson,* 128 N. Y. 270, 291.) Mrs. Newman neither declared her interest in the property nor objected to the contract. It is evident that Farr thought that Mr. Newman was the sole owner. He had the right to so conclude under the circumstances.

On the other hand, if Mrs. Newman intended to be bound by the agreement, then her actions faithfully reflected that intent. The evidence, in fact, discloses that she was in complete accord with the sale at the price *she* set, stating: "Very well. That is good." The Newmans simply received a better subsequent offer. The plaintiff relied on her attitude and her acquiescence in her husband's execution of the agreement and made his deposit and entered into a contract on that basis. Under these circumstances Mrs. Newman would be estopped from denying the authority of her husband to execute the contract on her behalf and from invoking the defense of the Statute of Frauds. (*Warren* v. *Hoch,* 276 App. Div. 607; *Joehl* v. *Tricarico,* 271 App. Div. 898; *White* v. *Smith,* 271 App. Div. 1016; *Portnoy* v. *Vicchiolla,* 18 Misc 2d 1026.) Also, her silence, at a time when she had both the duty and the opportunity to speak, would estop her from asserting her partial ownership of the property as against Farr. (Cf. *Thompson* v. *Simpson,* 128 N. Y. 270, 291, *supra.*) "Where a person wronged is silent under a duty to speak, or by an act or declaration recognizes the wrong as an existing and valid transaction, and in some degree, at least, gives it effect so as to benefit himself or so as to affect the rights or relations created by it between the wrongdoer and a third person, he acquiesces in and assents to it and is equitably estopped from

impeaching it." (*Rothschild* v. *Title Guar. & Trust Co.*, 204 N. Y. 458, 461.) Defendant Hardy, charged with full knowledge of all the facts, stands in no better position to deny estoppel or to invoke the Statute of Frauds than would Mrs. Newman if she were a party to the action.

As we have indicated, there was quite a wide variance between the facts developed at trial and the allegations and theories of the complaint. Nevertheless no element of surprise to the defendant Hardy appears, nor was it claimed. The complaint contains the usual demand for "other and further relief." Therefore, in this equitable action, under our broad and flexible powers, we may render such judgment as is appropriate under the facts as they appear in the record. This court said in *Bonham* v. *Coe* (249 App. Div. 428, 439): "But this is an action in equity, and equity, once having acquired jurisdiction of a case, will administer all the relief which the facts and the nature of the controversy demand. The fact that the specific relief demanded is inadequate to the relief about to be granted will not prevent the court from granting a proper judgment, where, as here, the complaint demands 'such other and further relief as shall be just and proper.' A prayer for general relief is as broad as the equitable powers of the court, and under it the court may properly shape its decree in accordance with the equities of the case. (*Russell Hardware & Implement Mfg. Co.* v. *Utica Drop Forge & Tool Co.*, 195 N. Y. 54; *Skillin* v. *Maibrunn*, 75 App. Div. 588; affd. 176 N. Y. 588; *Rogers* v. *New York & Texas Land Co.*, 134 id. 197, 219.)"

This general rule was reiterated in *Weil* v. *Atlantic Beach Holding Corp.* (1 N Y 2d 20, 29): "Since the complaint prays for an injunction and general relief, such a prayer invoked the equity powers of the court in the broadest terms. (*Ferguson* v. *Village of Hamburg*, 272 N. Y. 234, 239.) 'A prayer for general relief is as broad as the equitable powers of the court, and under it the court may properly shape its decree in accordance with the equities of the case.'"

For these reasons the defendant Hardy is obliged to convey good and clear title to the property in question to the plaintiff upon the payment of the purchase price of $3,000, and the judgement should be reversed and a judgment for specific performance entered accordingly.

GOLDMAN, HALPERN, McCLUSKY and HENRY, JJ., concur.

Judgment unanimously reversed on the law and facts, with costs and judgment for plaintiff directed to be entered in accordance with the opinion, with costs.