Argued January 11, affirmed April 2, 1973

# WESTERN HILLS, OREGON, LTD., *Respondent,* v. PFAU ET AL, *Appellants.*

508 P2d 201

*Richard D. Barber,* Salem, argued the cause for appellants. On the brief were DeArmond, Sherman & Barber.

*Malcolm F. Marsh,* Salem, argued the cause for respondent. On the brief were Clark & Marsh and Michael C. McClinton.

McALLISTER, J.

This is a suit to compel specific performance of an agreement to purchase real property. The plaintiff, the owner of the property, is a limited partnership. Defendants are members of a joint venture, formed for the purpose of purchasing the property from plaintiff and developing it. The trial court found that plaintiff was entitled to specific performance of the

agreement, and entered its decree accordingly. Defendants appeal, contending that they were excused from performing by a failure of a condition contained in the agreement, and that the agreement is too indefinite to permit specific enforcement.

Plaintiff Western Hills owned a tract of approximately 286 acres in Yamhill County which it had listed for sale with a Salem real estate firm. Defendant Pfau, who is also a real estate broker, heard about this listing early in 1970. He contacted the other defendants, and they jointly submitted a proposal to purchase the property. Their original proposal was not accepted, but negotiations with Western Hills took place which culminated, on or about March 6, 1970, in the execution of the written agreement which is the subject of this suit. The agreement consists of a filled-in form entitled "Exchange Agreement" together with several attached documents. Generally, it provides that in exchange for the Yamhill County property, defendants agreed to pay Western Hills $15,000 in cash, to convey to Western Hills four parcels of real property "subject to appraisal and acceptance" by Western Hills, and to pay a balance of $173,600 on terms specified in the agreement. In addition to other terms not material to this appeal, the agreement provides:

> "Closing of transaction is subject to ability of purchasers to negotiate with City of McMinnville as to a planned development satisfactory to both first and second parties within 90 days from date. A reasonable extension not to exceed 6 months to be granted if necessary."

Defendants made preliminary proposals for a planned development to the McMinnville Planning

Commission, but, although the Commission's reaction to these proposals was favorable, defendants abandoned their attempts to secure approval of a development plan. In September, 1970, defendant Pfau, who represented the other defendants in the transaction, met with some of the partners in Western Hills and notified them that defendants did not wish to go through with the purchase. Western Hills refused to release defendants from the agreement. This suit followed.

Defendants contend that their obligation to purchase the property never became absolute because the condition quoted above was never fulfilled. It appears from the evidence that defendants did not proceed with their application for Planning Commission approval of a planned development because they believed the development would be too expensive, primarily because city sewers would not be available to serve the property for several years. Immediate development would have required the developers to provide a private system of sewage treatment and disposal.

It also appears that at the time they executed the agreement, defendants knew that city sewers would not be available for some time. Defendants' initial offer of purchase included a proposal that the closing of the transaction be subject to satisfactory sewer development. This term was deleted from the final agreement because, according to plaintiff's witnesses, the parties knew that sewers would not be available. Pfau testified that he agreed to the deletion of that term because he was led to believe that the provision for approval of a planned development accomplished the same thing.

■ The question is whether defendants were excused from performing their agreement to purchase the property because they never secured the city's approval of a "satisfactory" planned development, when the evidence shows that they abandoned their application for an approved planned development because the expense of providing an alternative sewer system made the development financially unattractive. In *Anaheim Co. v. Holcombe,* 246 Or 541, 426 P2d 743 (1967) we considered an earnest money agreement which contained a provision making the purchaser's offer "contingent on obtaining a loan of $25,000." We held that when an agreement contains such a term, it imposes upon the vendee an implied condition that he make a reasonable effort to procure the loan. 246 Or at 547. See, also, *Aldrich v. Forbes,* 237 Or 559, 570, 385 P2d 618, 391 P2d 748 (1964). In the present case defendants had a similar duty, arising by implication, to make a reasonable effort to secure the city's approval of a planned development. As related above, defendants abandoned their attempt to secure the approval of the city Planning Commission in spite of that body's favorable reaction to their initial proposals. There was never any indication that defendants' plan was likely to be rejected.

■ The condition required, however, not only approval of a planned development, but of a development which was "satisfactory" to the parties. When a contract makes a party's duty to perform conditional on his personal satisfaction the courts will give the condition its intended effect. See, generally, 3A Corbin on Contracts, 78-109, §§ 644-648; 5 Williston on Contracts (3d ed 1961) 189-218, §§ 675 A, 675 B; Restatement of Contracts § 265. Discussing such contracts,

this court said in *Johnson v. School District No. 12,*
210 Or 585, 590-591, 312 P2d 591 (1957):

"\* \* \* Such contracts are generally grouped
into two categories:

"(1) Those which involve taste, fancy or per-
sonal judgment, the classical example being a com-
mission to paint a portrait. In such cases the
promisor is the sole judge of the quality of the
work, and his right to reject, if in good faith, is
absolute and may not be reviewed by court or jury.

"(2) Those which involve utility, fitness or
value, which can be measured against a more or less
objective standard. In these cases, although there
is some conflict, we think the better view is that
performance need only be 'reasonably satisfactory,'
and if the promisor refuses the proferred perform-
ance, the correctness of his decision and the ade-
quacy of his grounds are subject to review."

The condition with which we are concerned in this case
properly belongs in the first of these categories as it
requires the exercise of the parties' personal judgment.
There is no objective test by which a court or jury
could determine whether a particular development plan
ought to be "satisfactory" to reasonable men in de-
fendants' position. The condition is similar to that in
*Mattei v. Hopper,* 51 Cal 2d 119, 330 P2d 625 (1958)
in which the purchaser's duty under a land sale con-
tract was "subject to Coldwell Banker & Company ob-
taining leases satisfactory to the purchaser." In a suit
by the purchaser to compel specific performance, the
seller contended that because of this provision there
was no mutuality of obligation. The court held that
there was a valid contract. Discussing the two types
of "satisfaction" clauses, the court said:

"\* \* \* However, it would seem that the factors
involved in determining whether a lease is satis-
factory to the lessor are too numerous and varied

to permit the application of a reasonable man standard as envisioned by this line of cases. * * *

"This multiplicity of factors which must be considered in evaluating a lease shows that this case more appropriately falls within the second line of authorities dealing with 'satisfaction' clauses, being those involving fancy, taste, or judgment. Where the question is one of judgment, the promisor's determination that he is not satisfied, when made in good faith, has been held to be a defense to an action on the contract. * * *" 330 P2d at 627.

The condition in the present case is similar to that in *Mattei* in another respect as well. In that case as in this one the question of satisfaction was not concerned with the quality of the other party's performance. The court in *Mattei* held that the general rule was nevertheless applicable:

"* * * Even though the 'satisfaction' clauses discussed in the above-cited cases dealt with performances to be received as parts of the agreed exchanges, the fact that the leases here which determined plaintiff's satisfaction were not part of the performance to be rendered is not material. The standard of evaluating plaintiff's satisfaction —good faith—applies with equal vigor to this type of condition * * *." *Id.*

As in *Mattei* we are concerned in this case with a "satisfaction" clause of the type requiring the exercise of personal judgment as to a matter which was not part of the other party's agreed performance. The test, as indicated, is the promisor's real, not feigned, dissatisfaction. See *Johnson v. School District,* supra, 210 Or at 591.

■ It is clear from the authorities, however, that this dissatisfaction must be not only bona fide and in

good faith, but also must relate to the specific subject matter of the condition. General dissatisfaction with the bargain will not suffice.

"* * * Where a promise is conditional, expressly or impliedly, on his own satisfaction, he must give fair consideration to the matter. A refusal to examine the * * * performance, or a rejection of it, not in reality based on its unsatisfactory nature but on fictitious grounds or none at all, will amount to prevention of performance of the condition and excuse it." 5 Williston, op. cit. 203-204.

As Corbin points out, although the promisor is under no duty if, in good faith, he is dissatisfied with a performance to be rendered to his personal satisfaction, nevertheless

"* * * [n]ot infrequently it is possible to prove that the defendant is satisfied in fact, that the work has been done exactly as he specified, and that his dissatisfaction is either with his own specifications or merely with having to pay money that he prefers to use otherwise. * * *" 3A Corbin, op. cit. 92.

■■ It is inherent in the requirement that dissatisfaction be bona fide and in good faith that the promisor cannot be allowed to base a claim of dissatisfaction on circumstances which were known or anticipated by the parties at the time of contracting.① In the pres-

---

① See Baltimore & Ohio R. Co. v. Brydon, 65 Md 198, 3 A 306, 9 A 126 (1886):

"* * * This contract was made after some negotiations between the parties. It cannot be a matter of doubt that both parties intended that the coal should be furnished from the plaintiff's mine. *As a matter of course it was not expected that it should be equal in quality to that which came from the Big Vein Mines; and no just construction of the contract can give to it such a meaning.* It was, however, to be satisfactory

ent case the evidence is clear that the defendants entered the agreement with full knowledge that city sewer service would not be immediately available and that their development of the property would have to include a sewage disposal system of some kind. The *Brydon* case is in point and its reasoning is persuasive. Although defendants were entitled under the contract to be the judges of their own satisfaction with any development plan that might be approved by the city, they should not be permitted to rely on the "satisfaction" clause in order to reject the contract because of an expense known and contemplated at the time of contracting. We hold, therefore, that defendants were not justified in abandoning their attempts to secure city approval of a development plan simply because of the expense of providing a sewer system which they knew when they entered the contract would have to be provided as a part of the development. Not having performed their duty to use reasonable diligence to obtain city approval of a development plan, defendants may not rely on the nonoccurrence of the condition. *Anaheim Co. v. Holcombe,* supra.

■■ Defendants next contend that the agreement cannot be enforced because it is too indefinite, uncertain, and incomplete. They point first to the lack

---

to the officers who were named. But this term of the contract did not give them a capricious or arbitrary discretion to reject it. * * * Certainly they were not obliged to accept the coal, if they thought it was not fit for the uses contemplated by the contract; *neither on the other hand would they be justified in rejecting it for the reason that it did not possess qualities, which at the time of the contract it was known by the parties that it did not possess. * * *"* 65 Md at 220. (Emphasis added.)

See 3 A at 309, where the word "quantity" appears instead of the word "quality" in the first italicized sentence in the quotation.

of legal descriptions of the various properties in the written agreement. Recently in *Kallstrom v. O'Callaghan,* 259 Or 210, 485 P2d 1200 (1971) we reviewed our cases involving indefinite descriptions in land sale contracts, and concluded that a contract is sufficiently definite if it can be determined from the description, together with extrinsic evidence, that a particular piece of land was intended. We quoted there from another recent case:

> " 'The fact that the property was not properly described in the writing does not necessarily mean that as between the parties the contract was unenforceable. In deciding disputes between the parties to a land sale contract, courts, including this one, have often held that evidence showing that *both parties clearly understood what land was intended,* or that the seller had put the purchaser into possession of a particular tract, would cure uncertainties in the contract description of the land. * * * (Emphasis added).' " [*Higgins v. Insurance Co. of N. America,* 256 Or 151, 156-157, 469 P2d 766 (1970).] 259 Or at 225.

In the present case, unlike *Higgins,* the purchasers have not gone into possession. Nevertheless, we believe there is ample evidence that the parties knew which parcels of land were intended by the agreement, and that there was no uncertainty as to the subject-matter of the contract. The following cases have found contracts enforceable, in spite of incomplete descriptions in the writing, based on evidence of the parties' understanding. *Moody v. Osborne,* 261 P2d 783 (Cal App 1953); *Colstad v. Levine,* 67 NW2d 648 (Minn 1954); *Farr v. Newman,* 18 AD2d 54, 238 NYS2d 204 (1963); *Suchan v. Swope,* 357 Pa 16, 53 A2d 116 (1947); *Duggan v. Krevonick,* 169 Va 57, 192 SE 737 (1937). See, also, *Wurzweiler v. Cox,* 138 Or 110, 114,

5 P2d 699 (1931) recognizing the relevance of evidence that the parties to an exchange agreement pointed out their respective properties to each other. Since defendants in this case do not rely on either the Statute of Frauds[2] or the parol evidence rule;[3] we have considered all the evidence bearing on this question.

One of the tracts which defendants were to convey to Western Hills is described in the body of the agreement as "12 acres, 6341 Brooklake Rd. NE, Salem. Part of Loyal Peterson Ranch." A survey map, attached as an exhibit to the agreement, shows an outlined parcel specified as twelve acres which defendants Pfau and Peterson testified was the twelve acres above referred to. The survey map, as marked, is fully adequate to identify the land.

Another of the tracts to be conveyed by defendants is described in the body of the agreement as "16 acres of 69 acre ranch owned by King, Pfau, Gardener." An exhibit to the agreement shows the location of this parcel as "Rt 1 Box 309A Silverton, Oregon, which is 3 miles NE of Silverton". The exhibit contains a sketch with an area outlined in red and labeled "16 a of 24 a plot." The sketch would not be adequate for location of the boundaries, and Pfau testified that the outline was inaccurate and contained more than the intended 16 acres. He testified, however, that he visited the land with some of the Western Hills partners and pointed out to them the 16 acres which defendants intended to convey, and that Western Hills

---

[2] Compare Woolsey v. Draper, 103 Or 103, 201 P 730, 203 P 582 (1922).

[3] Compare Meadowlark Inv. Corp. v. Croeni, 237 Or 535, 392 P2d 327 (1964); Hyland v. Oregon Agricultural Co., 111 Or 212, 225 P 728 (1924).

agreed to take the land he showed them. Mr. Twedt and Mr. Moore, partners in Western Hills, testified that they walked the property with Pfau and agreed to take the 16 acres adjacent to the creek.

The written agreement describes the Western Hills property, which defendants agreed to purchase, as "property of Western Hills Oregon Ltd. * * * situated in City of McMinnville, County of Yamhill State of Oregon an acreage of approximately 286 acres having a legal description as follows: Section 24 & 19, township 4 S., Range 4W and 5W." It appears that no complete legal description was ever furnished to defendants. They were, however, given maps of the property and it was defendant Pfau who, from these maps, furnished the incomplete legal description contained in the written agreement. It is also admitted that Pfau, accompanied by members of Western Hills, visited the property prior to executing the written agreement and later walked the boundaries of the subject property and located all but one of the corners. There is no doubt that the parties agreed on the precise land defendants were to purchase.②

■ Defendants next contend that the agreement is too uncertain for enforcement because it provides that the property to be conveyed by defendants is "subject to appraisal and acceptance" by Western Hills without

---

② We note that, although no legal descriptions of the above properties were introduced into evidence, the decree describes them by metes and bounds. The decree is apparently based on materials furnished by the parties after the conclusion of the taking of evidence, and it cannot be determined from the record whether the decree correctly describes the lands covered by the agreement. Defendants, however, have not raised this question or contended that the decree contains inaccurate descriptions. Under these circumstances, we will assume that the descriptions in the decree are correct.

provision for an alternative in the event that Western Hills did not accept any of defendants' property. In fact, Western Hills refused to take the two houses referred to in the agreement, and prior to the trial they were sold to someone else. The trial court found, however, that the parties had settled this problem and we agree with that finding. The evidence shows that in the original agreement defendants represented the houses to have net values totaling $15,500. When Western Hills refused to accept the houses as part of the consideration for its property, the parties discussed the possibility that plaintiff's broker and Pfau, who were to share the broker's commission, would take the houses as all or part of the commission, and that the details of this arrangement would be worked out between the two brokers. Plaintiff's broker, however, refused to accept the houses, at least at the values represented. Nevertheless, the parties did not treat the rejection of the houses as a rejection of defendants' offer, but instead treated the agreement as in effect. Mr. Moore, one of the Western Hills partners who was active in the transaction, testified that defendants agreed to make up the difference in cash. The conduct of the parties in proceeding under the agreement lends credence to this testimony. We find that the parties agreed that defendants would furnish additional cash to make up the represented value of the houses and that the evidence supports the portion of the decree directing defendants to pay $15,500 in lieu of the houses.

■ Defendants' further contention that the provisions for payment of the balance due, as contained in the written agreement, were too indefinite for enforcement is totally without substance. The agreement

provides in detail for amounts and dates of payments and for interest at specified rates.[9]

■ Finally, defendants contend that the trial court was in error in requiring them to pay the taxes on the Western Hills property and interest on the purchase price from December 6, 1970, in spite of the fact that they were not in possession during that period. The written agreement allowed the defendants 90 days within which to secure the city's approval of its planned development, with provision for an extension not to exceed six months. Closing of the transaction upon approval of defendants' planned development was contemplated, and the agreement provides for the proration of taxes and the computation of interest as of the closing date. The delay in closing was caused by defendants' default in their obligation to attempt to secure approval of their development plans, not by any fault on the part of Western Hills. There is no

---

[9] "Balance of $173,600 payable as follows:

"A. First parties to assume and agree to pay existing contract of sale in the principal amount of $33,000, payable $1753.00 semi-annually, including interest at 5% per annum.

"B. $140,600 to be interest free for two years after close of deal.

"$20,000, plus interest at 6% per annum on $140,600 due 3 years from closing date.

"$10,000, plus interest at 6% per annum on $120,600 due 4 years from closing date.

"$10,000, plus interest at 7% per annum on unpaid principal balance, due 5 years from closing date, and each 12th month thereafter until principal balance is paid in full.

"Acceleration of payments may be made without penalty, and all principal due on or before July 1, 1982.

"Acreage releases on contiguous parcels of land to be granted purchaser upon payment of $600.00 per acre (said payment to be in addition to the original down payment of $69,500.00, but annual payments shall entitle purchaser to release of acreage equivalent of principal payments divided by $600.00."

evidence that Western Hills realized any income or benefit on account of its possession of the property after the time for closing the transaction had passed. The court did not err in requiring defendants to pay taxes and interest from the latest date contemplated by the agreement for closing. See *Schmid v. Anderson,* 311 Ky 1, 222 SW2d 931 (1949); *Boswell v. United States,* 123 F2d 213 (5th Cir 1941).

The decree of the trial court is affirmed.