Argued February 8, modified May 8,
petition for rehearing denied by opinion June 19, 1979
See 286 Or 669, 596 P2d 554

COLUMBIA CHRISTIAN COLLEGE, INC.,
*Respondent-Cross-Appellant,*
*v.*
COMMONWEALTH PROPERTIES, INC.,
*Appellant-Cross-Respondent,*
(No. 423-056, SC 25374)

594 P2d 401

James H. Clarke, Portland, argued the cause for appellant. With him on the briefs were George L. Kirklin and O. Meredith Wilson, Jr., of Dezendorf, Spears, Lubersky & Campbell, Portland.

John E. Frohnmayer, of Tonkon, Torp & Galen, Portland, argued the cause and filed a brief for respondent.

Before Holman,* Presiding Justice, and Howell, Lent and Linde, Justices.

HOWELL, J.

---

* Holman, J., did not participate in this decision.

## HOWELL, J.

This is a suit for specific performance of a land sale contract. The trial court found specific performance impracticable but awarded the plaintiff "equitable compensation" in the amount of $92,300 to compensate plaintiff for the length of time its property was tied up in the transaction. Defendant[1] appeals the award of equitable compensation, and plaintiff cross appeals, seeking more compensation. Plaintiff does not appeal the denial of specific performance. Because we review de novo, it is necessary that we set forth the facts in detail.

Plaintiff is the owner of a 268-acre tract of land in east Multnomah County. In the spring of 1973, plaintiff decided to sell the property and listed it with a Eugene real estate broker, who in turn engaged a Gresham brokerage firm to assist in the sale. The firm distributed information about the property to a number of developers, including defendant.

Defendant, acting principally through Ernest Platt, a vice-president, expressed some interest in the property. Negotiations followed, and on June 27, 1973, plaintiff offered defendant a 180-day option on the property. The terms of the option were as follows:

"1. $10,000. payment as consideration for a 180 day option, which shall apply to the purchase price.

"2. Within this option period, Commonwealth Properties, Inc. shall have 60 days within which to undertake engineering and geological studies to determine suitability of the site for the intended uses. Should these reports and studies indicate the property unsuitable for a residential development, then the option shall be terminated and the monies heretofore paid shall be returned to Commonwealth Properties, Inc.

"3. Upon completion of paragraph 2 above, and still within the 180 day option period, Commonwealth shall (a) attempt to secure approval to annex

---

[1] There are two defendants in this suit, but only defendant Commonwealth has appealed. We will used "defendant" to refer to Commonwealth only in this opinion.

the site to the City of Gresham; (b) apply for and obtain satisfactory zoning; (c) apply for permission to connect to city utility services, which may include the formation of an improvement district to accomplish this end.

"4. If, at the expiration of the 180 day option period, the applications referred to in 3(a), 3(b) and 3(c) above be then pending with no decision having been rendered thereon, then upon the deposit of an additional $10,000. the option shall be extended 90 days in which to complete conditions 3(a), 3(b) and 3(c). Said payment shall apply toward the purchase price.

"In the event a decision satisfactory to Commonwealth Properties cannot be obtained to conditions 3(a), 3(b) or 3(c), then the option shall be terminated.

"It is the intent of this extension provision that, should the extension be exercised, Commonwealth Properties shall be obligated to purchase the property, subject only to satisfactory decisions on items 3(a), 3(b) and 3(c)."

On July 3, defendant responded to this offer through Platt. Platt stated that he was "prepared to recommend to our management the purchase of this property in accordance with the terms of that letter * * *." Platt again wrote on August 22 and September 18, asking that the time for approval be extended. With his September 18 letter, Platt enclosed defendant's check for $5,000 and offered to pay an additional $5,000 after receiving approval of the terms of the option "at which time the 180-day option period shall begin." Plaintiff accepted this proposal but stated that the 180-day period would run from September 18.

The second $5,000 was paid on November 26, and defendant proceeded with preliminary studies and initiated the proceedings necessary to satisfy the conditions in plaintiff's offer. The annexation of the property to the City of Gresham was completed in the spring of 1974, but it appeared that it would take more time to obtain "satisfactory zoning."

[324]

In February, 1974, the parties agreed to extend the option six more months, from March to September, for which defendant paid $25,000.

Because of the size of the project, defendant first sought approval of a "concept plan," which was to be followed by a final application. One of defendant's consultants testified that he contemplated that the final plan would be consistent with the concept, with possible "minor differences." Prior to submission of the plan, defendant's brokers met informally with the planning staff of the Gresham Department of Protective Services. Following this meeting, on August 12, 1974, the Department issued a report listing "concerns, comments, and questions" about the project.

On August 13, 1974, defendant applied for a zone change in accordance with the terms of the concept plan.

On September 18, 1974, plaintiff and defendant again agreed to extend the option, this time until December 15. Defendant paid nothing for this extension.

In October and November of 1974, defendant's application was considered by the City Planning Commission at two public hearings. On November 25, 1974, the Planning Commission recommended approval of the concept plan on the condition that:

" * * * all of the problems and concerns expressed in the public hearings, including that of the City Planning staff, are solved in the final plan. The final plan is to be presented in further public hearings before the Planning Commission and City Council. * * * The approval of such a final plan shall satisfy zone change requirements and be binding on the City of Gresham and the developers and their assigns."

The "problems and concerns expressed in the public hearings" were numerous and included the potential traffic problems resulting from the development and problems concerning drainage facilities. Defendant's consultant apparently believed that defendant would

be required to remedy offsite traffic problems to an extent greater than it was prepared. Although the director of the Gresham Planning Commission testified that the project could not be rejected for defendant's failure to solve offsite problems, there were indications that approval might be withheld unless a solution was forthcoming and that only defendant was in a position to come up with a solution.[2]

In December of 1974, Platt told plaintiff's broker that defendant did not consider the zoning approved by the Planning Commission to be satisfactory and indicated that defendant would "pass up" its option to purchase the property. Defendant had estimated that the research alone necessary to answer the concerns expressed by the Planning Commission would cost another $100,000 and would take six months to complete. Even then, defendant did not believe the City Council would approve the development unless defendant arranged to solve the problems.

On December 19, however, defendant requested a third six-month extension of the option. In exchange for this extension, defendant offered to increase the purchase price for the property from $3,800 to $4,100 per acre. Plaintiff accepted this offer. Platt testified

---

[2] Dale Johnson, one of defendant's vice presidents, testified as follows:

"Q. Did you have the understanding that some of those concerns included extension off site road problems?

" * * * * *.

"THE WITNESS: I was aware of the concerns of the County regarding access to 190th Street and the dependence upon 182nd as a secondary or perhaps ever a major route. I was aware that the County had said the property should not be developed until those two routes were improved.

"From my experience with this kind of condition imposed, although we might not specifically have to do it, standard procedure is to tell the developer, you won't develop until it's done. The people that live in those areas didn't want us to do it. It was easy for them to say, we are not going to improve those sites. And we would sit there for an indefinite period of time waiting for some future improvements of those rights of way. We had not anticipated spending any monies. In fact, in most cases we couldn't because rights of way is [sic] not available. It was in fact a deferral of the development of the property, which is not an uncommon technique in local governmental decisions on land use development."

that the request for the third extension was made in order to allow defendant to go to the Gresham City Council with the present version of its concept plan and seek approval of the concept without the conditions imposed by the Planning Commission.

The hearing before the City Council was held on January 21, 1975. Defendant was represented by its consultant, David Evans. Evans sought approval of the concept plan without conditions, arguing that the City's approval of the project should not be tied to requirements concerning offsite problems. Some of the council members, however, opposed the project and expressed the view that defendant should bear the entire cost of offsite improvements, particularly road improvements.

On February 4, 1975, the City Council approved the ordinance " * * * providing that the problems and concerns of the City Planning Staff and those expressed in public hearings on said land use change are solved in the final plan by the applicant."

On February 10, 1975, Paul Zeger, plaintiff's real estate broker, talked with Dale Johnson, defendant's managing officer, about the action by the City Council. Johnson said he was aware of the action. Zeger told Platt that plaintiff needed a written contract incorporating the terms of sale. Zeger testified that Platt said a contract was being prepared.

Over the next four weeks, Zeger remained in contact with Platt. According to Zeger, each time he questioned Platt about the contract, he said it was being prepared.

On March 17, 1975, Zeger and an associate, John Bollons, met with Platt and Johnson. According to Zeger, the meeting was arranged because he "had indication that Commonwealth Properties might not go through with the purchase." Zeger testified that Platt and Johnson did not state during the meeting that defendant definitely would not proceed with the purchase, but indicated that was a possibility.

[327]

Platt testified that at the March 17 meeting he and Johnson told Zeger and Bollons that the zoning conditions were unsatisfactory and that defendant did not intend to complete the purchase. According to Platt, Zeger nevertheless requested that a purchase contract be drawn up in order to "buy time," and Bollons asked that defendant not inform plaintiff of its decision not to complete the purchase. Platt said that Zeger and Bollons were hopeful of saving their commission on the transaction and that they subsequently showed the property to other prospective buyers.

On March 21, 1975, Platt wrote to Pioneer National Title Insurance Company, saying in part:

"Commonwealth Properties has obtained an option to purchase 268.61 acres from Columbia Christian College, which is located in the city of Gresham * * *.

"Will you please issue a preliminary title report and forward copies to our attorney, Mr. O. Meredith Wilson, * * *; to Mr. Paul Zeger * * * who represents the sellers; and to me at the address shown on the letterhead.

"The purchase price is expected to be $1,018,400."

On April 8, 1975, Morris Galen, attorney for plaintiff, wrote to defendant, saying:

"We are attorneys for Columbia Christian College from whom you are purchasing a certain tract of real property in the City of Gresham, Oregon, consisting of 260 acres for a price of $4,100 per acre.

"The record indicates that all of the conditions for the purchase have been satisfied. Our client understood that you were having the documents prepared for final closing and had anticipated receiving them prior to this time.

"We will represent Columbia Christian College in connection with this transaction. Kindly forward all closing documents to us for approval in order that the transaction will close without further delay."

On April 18, 1975, Platt responded to Galen, saying:

"Reference is made to your letter of April 8, regarding your representation of Columbia Christian

[328]

College in the purchase of the 268 acres in the city of Gresham.

"Documents are being prepared for the purchase of this property by Mr. O. Meredith Wilson, with Dezendorf, Spears, Lubersky & Campbell, and should be available for forwarding to you shortly. In the meantime, if you have any questions, please feel free to contact Mr. Wilson or myself."

On May 5, 1975, Wilson sent Galen a proposed contract for sale of the property. The following day he sent Galen a copy of the preliminary title report. Galen responded to the contract in a letter dated May 20, 1975. Galen received no response, and again wrote on June 18, 1975, requesting that the transaction be closed without delay.

Platt testified that he again informed Zeger in June of 1975 that defendant was not going to purchase the property. On July 21, 1975, Wilson wrote Galen, stating that the zoning was unsatisfactory and that therefore the transaction was off.

Defendant contends the trial court erred in granting plaintiff "equitable compensation" for defendant's failure to purchase the property because (1) defendant had no duty under the contract; (2) if defendant had a duty, it performed it by reasonably pursuing satisfactory zoning; and (3) this is not an appropriate case for the remedy of equitable compensation.

■ We reject defendant's first contention. Paragraph 4 of the original agreement gave defendant the right to extend the initial option 90 days by payment of $10,000 if defendant's applications for annexation, zoning, and utility connections remained pending at the end of the original option period. If defendant exercised its privilege to extend the option, the agreement provided that:

"* * * Commonwealth Properties shall be obligated to purchase the property, subject only to satisfactory decisions on [annexation, zoning, and utility connections by the City of Gresham]."

[329]

The original option period expired on March 18, 1974. In February of 1974, the defendant paid $25,000 to have the option extended for six more months. Defendant contends that this extension did not invoke the terms of paragraph 4 because defendant purchased a six-month extension for $25,000, while paragraph 4 refers to a 90-day extension at a cost of $10,000. After reviewing the record, however, we conclude that the parties understood that the February extension would bind defendant pursuant to the terms of the contract. There were numerous instances after the original option expired where various representatives of the defendant indicated a belief that they were acting under the terms of the original contract. It would serve no useful purpose to set forth the details of these instances in this opinion. It is sufficient to state that the evidence shows the February, 1974, extension, although not agreed to upon the exact terms of the original contract, nevertheless was understood by the parties as coming under the original contract. While the cost and length of the second option were modified, the remaining terms of the contract continued in force. *See Mail-Well Envelope Co. v. Saley,* 262 Or 143, 151-52, 497 P2d 364 (1972).

Defendant's next contention is that even if it had a duty under the terms of the contract, it performed that duty, and that the trial court therefore erred in awarding "equitable compensation." The trial court, in its written opinion, stated in relevant part the following:

"ZONING PROBLEMS

"Both parties recognize the obligation to purchase the subject property was conditioned upon obtention of satisfactory zoning. The plaintiff urges that the precise zoning sought by the defendant (R-10PD) has been granted. Defendant maintains the zoning ordinance enacted by the City of Gresham was conditional and because the conditions which are unknown may not be solvable or, if solvable, so burdensome the solution would render the defendant's projected use of the land uneconomical and unfeasible, it does not

constitute a reasonably satisfactory zone change. There is merit to both contentions.

"As far as it has gone, the defendant has been granted the zoning it applied for. Not only has the land been classified R-10 PD, but defendant's concept has been considered and approved. The defendant has not been advised with precision the 'problems and concerns of the City Planning staff and those expressed in public hearing' which it must solve in its final plan. Defendant, therefore, at this point reasonably concludes the conditional zone change enacted by the City is unsatisfactory."

The court then reviewed the sequence of events described earlier in this opinion, and said:

"When consideration is given to the foregoing facts, it cannot be concluded that at this moment adequate zoning has attached to the tract. Whether or not it could be obtained will not be known because defendant elected (in the Court's view, unreasonably) not to pursue the matter further."

We cannot determine from the trial court's opinion why it found defendant's decision not to pursue the matter further unreasonable. Were this an action at law, we might be inclined to affirm the trial court even without such an explanation because it is at least arguable that there is "some evidence" to support its conclusion. However, because this is a suit in equity, we are required by ORS 19.125(3) to review the record de novo. Having done so, we find ourselves in disagreement with the conclusion reached by the trial court.

At the outset it is necessary to make a distinction between (1) whether or not defendant has in fact obtained satisfactory zoning, and (2) if not, whether it was under a duty to make additional efforts to obtain that zoning. With respect to the first inquiry, we agree with the trial court that on the record before us, defendant has not obtained satisfactory zoning. The city ordinance leaves the city with virtually unlimited discretion to approve or disapprove the planned development, depending on whether or not the "concerns" of the Planning Commission and the public are

answered. Moreover, there are indications in the record that defendant's ability to obtain approval of the development will depend on its willingness to remedy offsite problems, and there is no evidence that this was contemplated by the parties when they originally executed the contract.

Plaintiff contends that inability to obtain satisfactory zoning is not the "real" reason defendant refused to proceed with the transaction. There was evidence that in late 1974 defendant no longer considered the planned development economical, and that due to the general decline in the housing market, defendant intended to limit itself to smaller projects. There was also evidence, however, that in December of 1974 defendant's vice-president, Ernest Platt, told Paul Zeger, plaintiff's real estate broker, that defendant would "pass up" its option to purchase the property due to the "unsatisfactory zoning."

■ It is true that where a contract is made subject to the occurrence of a condition to the "satisfaction" of one party, the party's dissatisfaction must relate to the specific subject matter of the condition. *Western Hills v. Pfau,* 265 Or 137, 144-45, 508 P2d 201 (1973). It does not follow, however, that dissatisfaction with other aspects of the bargain as well means a party is acting in bad faith. A party may be dissatisfied with a number of aspects of a bargain, some of which allow him to repudiate the contract and some of which do not. If one of the sources of dissatisfaction gives him a right under the contract to repudiate, the fact that there are other sources of dissatisfaction is immaterial.

■ The present case illustrates the artificiality of requiring that a party be dissatisfied only with the subject matter of a condition, and not with anything else. Plaintiff contends that the "real" reason defendant called off the contract was its dissatisfaction with the general economics of the transaction. It is clear, however, that one of the reasons the project had

[332]

become uneconomical for defendant was precisely because of the conditions the city attached to the zoning ordinance. This is demonstrated by Platt's testimony at trial:

"Q. Now, were these conditions as they were ultimately drafted into the Ordinance, by the City Council satisfactory to Commonwealth?

"A. No.

"Q. Explain in some detail, if you will, why they were not?

"A. Well, they are ambiguous, at best, as to what it is we are to satisfy. But to even attempt to satisfy them could cost nothing but a considerable sum of money. And my latest, most recent computations in performance of the project prior to that Council meeting was that the project was borderline at that time."

Upon de novo review of the evidence present at trial, we conclude that defendant's dissatisfaction with the zoning was in good faith. The fact that this dissatisfaction also was tied to the economics of the project as a whole does not mean defendant acted in bad faith. As defendant observes in its brief, "The suitability of available zoning is not determined in a vacuum."

■ Plaintiff also contends that defendant's actions after the ordinance was passed demonstrate that defendant was not dissatisfied with the zoning. Plaintiff notes that after the ordinance was passed defendant "proceeded to act as if it were prepared to complete the transaction by having its lawyers draft a final contract." We do not think this evidence is sufficient to show that defendant was satisfied with the zoning it obtained. Considering the magnitude of the transaction involved in this case, defendant was entitled to consider its options (proceeding with the purchase or refusing to proceed) after the City acted on its zoning application. The fact that it took steps toward a possible purchase did not mean it was satisfied with the zoning. Nor does that fact bar it from repudiating the contract on that basis.

■ Since satisfactory zoning was an express condition precedent to defendant's obligation to purchase the property, and since satisfactory zoning has not yet been obtained, the only remaining inquiry is whether defendant has satisfied its contractual duty to make reasonable efforts to obtain such zoning. *See Western Hills v. Pfau, supra.* Plaintiff contends that defendant did not satisfy its duty because it did not submit a final application for the zone change. It is undisputed, however, that it would have cost defendant $100,000 and taken six months to prepare the research necessary to answer the concerns expressed by the Gresham Planning Commission, and the ordinance passed by the Gresham City Council specifically stated that the zone change was conditioned upon a solution to "the problems and concerns of the City Planning Staff." Under these circumstances, we do not think defendant's decision to terminate the transaction can in any way be considered unreasonable. Defendant was not required to spend a substantial sum of money in order to pursue a transaction that it already considered "marginal," particularly when comments by city officials indicated that the zone change might be available only if defendant agreed to make offsite expenditures substantially in excess of those it originally contemplated. Nor was defendant required, in light of the express language used in the City ordinance, to go through the motions of submitting a final plan without doing the research necessary to answer the concerns of the Planning Commission.[3] Accordingly, we hold that defendant's failure to submit a final zone change application was not a breach of its contractual duty to make reasonable efforts to obtain satisfactory zoning.

Finally, plaintiff contends that defendant "cannot base a claim of dissatisfaction on circumstances which were known or anticipated by the parties at the time of

---

[3] Plaintiff also suggests in its brief that defendant acted unreasonably in failing to ask the City "what the ordinance meant." We see no ambiguity in the language of the ordinance and see no reason why it was unreasonable for defendant to assume the ordinance meant what it said.

contracting." Plaintiff then points out that defendant knew a final application would cost another $100,000 when it requested the December, 1974, extension on the option. However, defendant's knowledge in December, 1974, is not the same as its knowledge at the time the parties originally formulated the contract. At the time the contract was entered into, defendant did not know of the City's concerns over offsite problems and could not be expected to know that it would have to study such problems at a considerable cost. The fact that defendant requested an extension of the contract at a time when it did know of these concerns does not cause that knowledge to "relate back" to the time the original agreement was executed. Defendant had a right, in December, 1974, to request an extension in order to seek approval of its application without conditions, without obligating itself to pursue the contract further with the conditions.

■■ For all of these reasons, we conclude that defendant performed its duty under the contract to reasonably pursue satisfactory zoning, and that the City's refusal to grant defendant satisfactory zoning excused defendant from further performance. It follows that the plaintiff is not entitled to equitable compensation for having its property tied up during the period of the option. Plaintiff assumed the risk of the possibility that its property might be removed from the market for a certain period of time without a sale being closed when it entered into the contract with defendant. Since plaintiff bargained for that contingency, it cannot now claim compensation simply because that contingency occurred.

■■ Defendant's answer contained a counterclaim which it asks that we award on appeal for return of the $35,000 it deposited with plaintiff in exchange for its option to purchase the property. Normally we would not expect to see a refund provision in a contract such as this, where the vendor has granted an option to purchase for a period of nearly two years. In the present case, however, the evidence clearly shows that

plaintiff agreed to refund the option money if the sale did not go through,[4] and this court cannot relieve a party of an inequitable bargain if that is what is knowingly entered into. *See Gardner v. Meiling,* 280 Or 665, 572 P2d 1012 (1977); *Wilkinson v. Carpenter,* 276 Or 311, 554 P2d 512 (1976).

[4] In his letter of February 26, 1974, Platt requested the second extension of the option for which defendant offered to pay $20,000, which sum was later changed to $25,000. The last paragraph of the letter reads:

"All of this has carried us well past the original dates embodied in the option of June 28, 1973; therefore, it is my request that the option be extended until September 15, 1974, contingent upon our ability to obtain satisfactory zoning from the City of Gresham. As you, Fred York and I have discussed, we will transmit $20,000 on or before March 16, 1974, as consideration for this extention [sic], which shall be applied toward the purchase price upon exercise of the option. *In the event satisfactory zoning cannot be obtained, the monies shall be returned, as specified in the original agreement.* The other terms and conditions would remain unchanged." (Emphasis added.)

The record shows that plaintiff accepted this offer by resolution of the board of trustees dated March 15, 1974.

The testimony of Zeger, who handled virtually all of the negotiations for plaintiff, confirms this understanding of the agreement:

"Q. Did you have discussion with Commonwealth Properties about whether or not the deposit of $35,000 total would be forfeited by Commonwealth Properties before the option was extended the last time?

"A. I think a discussion was held with them concerning the possibility of forfeiting $20,000 of the $35,000 if they didn't go through with the final purchase.

"Q. All right. But that was suggested by Mr. York; was it not?

"A. It was conveyed to me by Mr. York. I don't know who made the suggestion originally.

"Q. It was discussed then with the representative of Commonwealth Properties, Mr. Platt?

"A. I think that's correct.

"Q. And it was not agreed that the deposit or any part of it would be forfeited on that basis; isn't that correct?

"A. That is correct.

"Q. You specifically discussed and the parties agreed it would not be forfeited; is that correct?

"A. That is correct.

"Q. So it was always everyones [sic] understanding that money would be repaid if the purchase was not going to go through; is that correct?

"A. It was my understanding and I think Mr. York was well aware of it."

It appears from the record that counsel who represented plaintiff in this litigation did not participate in negotiating the option agreement.

[336]

The decree of the trial court denying specific performance is affirmed, but the decree is modified to delete any award to plaintiff for equitable compensation and to award to defendant the sum of $35,000, the amount paid on the option.

Modified. Costs to neither party.