Argued and submitted December 11, 1981, reversed and remanded
with instructions April 5, reconsideration denied May 13,
petition for review denied June 22, 1982 (293 Or 340)

MARTIN,
*Appellant,*

*v.*

DILLON,
*Respondent,*

DILLON et al,
*Respondents,*

*v.*

MARTIN,
*Appellant.*

(No. A7905-02110, CA A20047)

642 P2d 1209

Alonzo P. Stiner, Portland, argued the cause and filed the briefs for appellant. With him on the reply brief was Lovett & Stiner, Portland.

Jeffrey M. Batchelor, Portland, argued the cause for respondents. With him on the brief were James H. Clarke, David B. Markowitz, and Spears, Lubersky, Campbell & Bledsoe, Portland.

Before Gillette, Presiding Judge, Young, Judge, and Roberts, Judge Pro Tempore.

YOUNG, J.

## YOUNG, J.

Plaintiff appeals from a judgment that ordered specific performance of an earnest money agreement. Plaintiff, the buyer, brought an action seeking the return of a $2,000 deposit paid pursuant to the agreement. Defendants counterclaimed for specific performance or alternatively for damages for breach of the agreement. The counterclaim for specific performance was tried first to the court without a jury. The resulting judgment for defendants[1] rendered moot plaintiff's action for return of the deposit and defendants counterclaim for damages. We review *de novo,* ORS 19.125(3), and reverse.

Defendants, as sellers, entered into an earnest money agreement[2] dated February 23, 1979, for the sale of a house to plaintiff for $130,000. The agreement provided that $2,000 would be paid upon execution, with an additional $3,000 to be paid "upon loan approval." The agreement also provided:

"Purchase is subject to purchaser obtaining suitable financing; loan approval must be obtained on or before 3/16/79, closing must be on or before 4/6/79; house and lot are purchased in 'as is' condition."

On March 1, 1979, plaintiff applied to Benjamin Franklin Savings and Loan Association (Association) for a maximum loan of 80 percent of the sales price, or $104,000. On March 6, 1979, the Association appraised the house at $120,000, and according to its policy of loaning 80 percent of appraised value, agreed to loan to plaintiff $96,000, subject to completion of various repairs, including painting.[3] Plaintiff was dissatisfied with the loan and instructed his then fiancee to look for another house.

On March 14, 1979, plaintiff entered into an earnest money agreement with third parties to purchase

---

[1] Plaintiff's action was commenced against Dennis L. Dillon only. He joined with his wife, Helen C. Dillon, on the counterclaims.

[2] The earnest money agreement was a Stevens-Ness form titled "Owner's Sales Agreement and Earnest Money Agreement." Defendant Dennis L. Dillon prepared the agreement.

[3] Initially the Association miscalculated and told plaintiff the loan would be $92,000, subject to the repairs. Plaintiff appears to have learned the appraised value sometime between March 9 and 16, 1979. The parties agree that the loan was approved for $96,000.

another house. At plaintiff's request the Association continued to process plaintiff's loan application for $104,000, which application was formally denied on March 21, 1979. On that date, plaintiff filed a second application with the Association to finance the purchase of the second house. That application was approved for a $112,000 loan. On March 20, 1979, plaintiff requested defendants to return the earnest money deposit less one month's rent.[4] Defendants believed that plaintiff had obtained "suitable financing" and refused to return any part of the earnest money deposit.[5] This litigation followed.

Plaintiff's principal contentions are that the court erred in finding that he failed to exercise good faith and due diligence in othat he did breachrespect, that the liquidated damage clause limits defendants' remedies to the forfeiture of the deposit and precludes specific performance. Plaintiff argues that the provision calling for "suitable financing" permits him to make a subjective determination of the suitability of the financing; that is, that the plaintiff must be *personally satisfied* with the financing arrangements.

In *Aldrich v. Forbes,* 237 Or 559, 570, 385 P2d 618, 391 P2d 748 (1964), the court interpreted language in an earnest money receipt that the purchase was "subject to purchaser securing satisfactory loan" as imposing upon the buyer an obligation to make a reasonable effort to secure a loan. In *Anaheim Co. v. Holcombe,* 246 Or 541, 426 P2d 473 (1967), the earnest money agreement included a provision that the buyer's offer was "contingent on obtaining a loan of $25,000."[6] There the court held that

---

[4] The parties had orally agreed that if financing could not be obtained, then the earnest money would be returned, less $400, being the agreed rental value of the house for one month.

[5] Defendants testified that prior to the signing of the earnest money agreement plaintiff said that a loan in the neighborhood of $75,000 to $85,000 would be suitable. Plaintiff denied making that statement.

[6] In *Anaheim Co. v. Holcombe, supra,* the clause in question was not conditioned on the personal satisfaction of or personal judgment of the buyer. *See Johnson v. School District No. 12,* 210 Or 585, 590-91, 312 P2d 591 (1957), for a discussion of contracts involving personal judgment and those involving the objective standard of a reasonable person.

"when an earnest money agreement provides that payment of the purchase price is conditioned upon the securement of a loan, an implied obligation is imposed upon the vendee to use reasonable diligence to procure the loan." 246 Or at 547.

■ When a party's duty to perform is conditional on his personal satisfaction, then on nonperformance the inquiry is whether the dissatisfaction is real or feigned. *Western Hills v. Pfau,* 265 Or 137, 508 P2d 201 (1973); *see also* 3A Corbin, Contracts, § 644-48 (1960); 5 Williston, Contracts, § 675A, 675B (3d Ed 1961); Restatement, Contracts § 265 (1932). In *Western Hills v. Pfau, supra,* where the purchaser's performance was conditioned upon his personal satisfaction, the court stated:

"* * *[The purchaser's] dissatisfaction must be not only bona fide and in good faith, but also must relate to the specific subject matter of the condition. General dissatisfaction with the bargain will not suffice. * * * [T]he purchaser cannot be allowed to base a claim of dissatisfaction on circumstances which were known or anticipated by the parties at the time of contracting." 265 Or at 144-45.

■ ■ In the present case, plaintiff made a single loan application. He knew that the Association's policy was to loan 80 percent of appraised value. When he became aware that the property was appraised at $10,000 less than the sale price, he abandoned the transaction and began to look for another house. On March 14, 1979, he signed another earnest money agreement on a second house, which he ultimately purchased. Plaintiff was not a naive or uninformed buyer of real estate. He had some 18 years as a builder and renovator of properties. At the time of trial, he claimed an interest in over 100 properties. The trial judge questioned plaintiff's credibility.[7] While we are not bound

---

[7] At the conclusion of the evidence the trial judge said:

"I think [plaintiff's] credibility is clearly in issue * * * for several reasons, but one specific reason is his statement that having entered into two earnest money agreements, and it being obvious that he could not come through on both, he was prepared to let one of the agreements go by default. * * * Plaintiff was going to breach his contract with somebody. He didn't know which, nor did it appear that he cared would be the victim of his breach. * * * I find that it was the understanding of the parties that suitable financing means something in the range of $75,000 to $85,000; that anything in excess of $85,000 would constitute suitable financing * * *. There is no evidence in this record to sustain a finding that this sale was contingent upon [plaintiff] securing $114,000 [sic] or any other amount in excess of $85,000."

by the findings of the trial judge where our review is *de novo,* nonetheless those findings are entitled to considerable weight, particularly when the evidence turns upon the credibility of a witness. *Phillips v. Johnson,* 266 Or 544, 554, 514 P2d 1337 (1973); *Norman v. Jerich Corp.,* 263 Or 259, 265, 501 P2d 305 (1972); *Empire Bldg. Supply Inc. v. EKO Investments, Inc.,* 40 Or App 739, 745, 596 P2d 593 (1979). On our review of the record, we have found no reason to disturb the findings of the trial judge. Plaintiff failed to prove by a preponderence of the evidence that he exercised good faith and reasonable diligence in obtaining "suitable financing."

Having decided that plaintiff breached the earnest money agreement, we must determine whether the contract precludes the remedy of specific performance. The clause in question provides:

"It is agreed that if the title to the said premises is not marketable, or cannot be made so within thirty days after notice, with a written statement of defects, is delivered to seller, the earnest money herein receipted for shall be refunded. But if the title to the said premises is marketable, and the purchaser neglects or refuses to comply with any of the conditions of this sale within 30 days and to make payments promptly, as hereinabove set forth, *then the earnest money herein receipted for shall be forfeited to the seller as liquidated damages, and this contract shall thereupon be of no further binding effect.*" (Emphasis added.)[8]

The presence of a liquidated damage or forfeiture clause will not *per se* preclude specific performance. *Slattery v. Gross,* 96 Or 554, 561-562, 187 P2d 300, 190 P2d 577 (1920); *Uribe v. Olson,* 42 Or App 647, 653, 601 P2d 818 (1979); 5A Corbin, Contracts, § 1213 (1964). However, the seller of land will be denied the remedy of specific performance if the language of the contract discloses that the parties *intended* to limit the seller to the recovery of liquidated damages upon the purchaser's default. *Uribe v. Olson, supra; Potter Realty Co. v. Derby,* 75 Or 563, 147 P 548 (1915); *see also,* Annot., 32 ALR 584; Annot., 98 ALR 887.

---

[8] The ruling of the trial court was that the clause "eliminated the [defendant's] ability to maintain an action for damages but did not preclude the remedy of specific performance."

*Potter Realty Co. v. Derby, supra,* involved a land sale installment contract that provided that, in the event the buyer defaulted in payment of any installment, all installments previously paid would be forfeited to the seller and the "contract shall be null and void as to both parties hereto * * *." Interpreting that language, the court stated:

> "The parties have agreed upon their own remedy for a breach of contract, that remedy is exclusive. * * * We find no reason for construing this contract to mean anything different from what its language implies. On default in the payments the purchaser loses what he has already paid, and the agreement becomes 'void as to both parties.' It would be juggling with words to say that this language should be construed to mean 'void at the option of the seller,' or 'void at the option of one party.' " 75 Or at 572.

In *Urbie v. Olson, supra,* the buyer sued for specific performance of an earnest money agreement. The liquidated damages clause provided:

> "It is agreed, if either seller or buyer fails to perform his part of this agreement, he shall forthwith pay to the other party hereto a sum equal to 10. of the agreed price of sale as consideration for the execution of this agreement by such other party."

We held that "[t]he intent to eliminate specific performance as a remedy does not appear from the clause in the contracts at issue." 42 Or App at 654. In arriving at our decision, we discussed *Dillard Homes, Inc. v. Carroll,* 152 So2d 738 (Fla App 1963), and cases therein cited, where the liquidated damage clause in a "deposit receipt agreement" provided that, in the event the buyer failed to pay the balance due at closing and failed to execute papers necessary for completion of the purchase within 60 days, then the sum deposited "* * * shall be retained by the seller as liquidated and agreed damages and the parties hereto shall be relieved of all obligations under this agreement." We held that the seller was not entitled to specific performance:

> "We have previously held that in an action for specific performance, our courts will not make a new or different contract for the parties simply because the one made by them proved ineffectual." 152 So2d at 741.

Defendants argue that *Save-Way Drugs, Inc. v. Standard Investment Co.,* 5 Wash App 726, 490 P2d 1342

(1971), is authority for the proposition that the clause in question does not preclude specific performance. We disagree. That case involved a motion for summary judgment and purported to interpret Oregon law. It is not dispositive of this case.[9]

 In the present case, the earnest money agreement required a deposit of $2,000, with an additional $3,000 to be paid "upon loan approval by the lender." The agreement required loan approval by March 16, 1979. The liquidated damages clause gave plaintiff 30 days from February 23, 1979, to perform, and in the event of his nonperformance "the earnest money receipted for shall be forfeited * * * and this contract shall thereupon be of no further binding effect." There is no ambiguity in that language. On default, plaintiff forfeited what he had paid, and the agreement terminated. The language of the contract restricts plaintiff's liability in the event of his nonperformance to the amount of his deposit. The remedy of specific performance was precluded.

This result has mooted plaintiff's action for return of the earnest money deposit and defendant's counterclaim for damages for breach of the earnest money agreement.

The decree of specific performance is reversed, and the case is remanded with instructions to dismiss both the second amended complaint and defendants' counterclaims.

---

[9] In *Save-Way Drug Inc. v. Standard Investment Co., supra,* the court declined to accept the argument that Oregon law applied because it was not pled, and held that under Washington law specific performance was not barred by a liquidated damage clause that provided:

"* * * The earnest money herein receipted for * * * shall be forfeited to sellers as liquidated damages and this contract thereupon shall be of no further binding effect."

The court criticized *Potter Realty Co. v. Derby, supra,* but attempted to distinguish it:

"[T]he language in *Potter* is substantially different from that in this case and, on its facts, does not apply here."